## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CURTIS PACKER and LORAINE DENARO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 3:04cv1506 (MRK) |
| | : | |
| SN SERVICING CORP., SN COMMERCIAL, | : | |
| LLC, INGOMAR LTD. PARTNERSHIP, | : | |
| and WELLS FARGO FOOTHILL, INC., | : | |
| | : | |
| Defendants. | : | |

## RULING CLARIFYING ISSUES FOR TRIAL

In light of questions raised by counsel during the pre-trial conferences, and in related motions and briefs, the Court now provides this ruling to clarify the issues that will be tried.

### I.    Mr. Packer's Negligent Infliction of Emotional Distress Claim

Mr. Packer can seek to prove liability for his negligent infliction of emotional distress claim by putting forward evidence relating to the following alleged wrongdoings by the SN Defendants: 1) failure to timely file a notice of assignment of the mortgage and note; and 2) failure to timely record assignment of the mortgage and note.  To avoid any confusion, the Court further notes that Mr. Packer may also seek to prove this claim by pointing to those alleged acts that the SN Defendants do not claim should be barred from evidence: 3) improper interest and debt computations; and 4) untimely payoff letters on the Elm Street property.  The Court has considered the SN Defendants' arguments that the evidence related to notice and recordation should be barred, but declines to adopt those arguments for the reasons outlined below.[1]  Further, to prove damages

---

[1] As stated by the Court during the pre-trial conferences, all evidence in this trial will be limited to that relating to the Elm Street property.  The parties will not be permitted to introduce evidence relating to the Blatchley Avenue property as the Court has previously decided that those claims are barred.

relating to this claim, Mr. Packer will only be permitted to introduce evidence relating to his alleged

emotional distress, and will not be permitted to point to evidence of commercial losses.

The SN Defendants first argue that Mr. Packer should be barred from offering evidence

about their alleged failures to provide notice and record the Elm Street assignment contending that

those alleged wrongdoings cannot provide the predicate wrongdoing for a negligent infliction of

emotional distress claim, since they owed no duty to Mr. Packer to perform them. As noted in this

Court's Summary Judgment Ruling [docs. ## 219, 220], to establish a claim of negligent infliction

of emotional distress, a plaintiff must prove the following elements: "(1) the defendant's conduct

created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was

foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily

harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carroll v. Allstate

Ins. Co.,* 262 Conn. 433, 444 (2003). Like all negligence claims, a claim of negligent infliction of

emotional distress requires a showing of breach of duty, *see Gomes v. Commercial Union Insurance,

Company*, 258 Conn. 603, 619 (2001), and whether such a duty exists is a question to be answered

by the Court, *see id.* at 614; *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 171 (1988)

("The existence of a duty is a question of law."). "Only if a duty is found to exist does the trier of

fact determine whether the defendant violated that duty in the particular instance." *Field v. Kearns,

43 Conn. App. 265, 278 (1996).

As an initial matter, the Court notes that although the SN Defendants appear to contend

otherwise, Connecticut courts have made clear that "[a] duty to use care may arise from a contract,

from a statute, or from circumstances under which a reasonable person, knowing what he knew or

should have known, would anticipate that harm of the general nature of that suffered was likely to

result from his act or failure to act." *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 630-31 (2006) (alteration and quotation mark omitted). Here, the SN Defendants owned and/or serviced Mr. Packer's mortgage on the Elm Street property. Moreover, the mere fact that this Court, in its Summary Judgment Ruling, concluded that Connecticut General Statutes §§ 49-10, 47-10 and 49-10a – instructing assignees to provide reasonable proof of assignment, to timely record assignments, and to provide proper and timely payoff letters – do not provide private rights of action, does not mean that the SN Defendants owed no common-law duty to Mr. Packer to properly service that mortgage or to comply with those statutory provisions. *See also Buckman v. People Express, Inc.*, 205 Conn. 166, 172 (1987) (holding that fact that statute provided employee remedy for employer's failure to accommodate employee's desire to continue insurance benefits after his termination did not eliminate employee's independent cause of action based on employer's breach of its common-law duty of good faith as an insurer); *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 384-88, 389-90 (1994) (applying duty analysis although as concurrence noted, the legislature provided for a non-private-cause-of-action statutory remedy in the form of workers' compensation).

Accordingly, the question the Court faces at this juncture is whether, given the many requests Mr. Packer is alleged to have made for verification of ownership of his mortgage, the SN Defendants had a duty to provide notice of the assignment to Mr. Packer and to timely record the assignment. "Although it has been said that no universal test for duty has ever been formulated . . . [the] threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." *Gomes*, 208 Conn. at 615.

> [T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy

> analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case.

*Id.* As *Gomes* makes clear, "[a] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists." *RK Constructors, Inc.*, 231 Conn. at 386. The Court must also "make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." *Id.* at 386. "What is relevant . . . is the measure of attenuation between [a defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand." *Id.* at 387. Determining whether a duty exists is done in the context of the circumstances in which it is alleged to have arisen. *See Nazami*, 280 Conn. at 630.

Applying this test, the Court concludes that the SN Defendants, as assignees of Mr. Packer's mortgage, had a duty to exercise care regarding notice and recordation of assignment, particularly when repeatedly asked, by Mr. Packer, to provide confirmation of ownership of his mortgage. It seems clear that it would be reasonably foreseeable to the SN Defendants that a mortgagor might suffer distress from being unable to verify who owns his mortgage or that the parties soliciting payment from him are in fact the parties that own his mortgage. *See, e.g.*, *RK Constructors, Inc.*, 231 Conn. at 387 (recognizing that it may have been foreseeable to third party that by causing accident to employer's employee, employer's workers' compensation premiums would increase); *Kilduff v. Adams. Inc.*, 219 Conn. 314, 326 (1991) (allowing claim that reasonably foreseeable to corporate lienholder's that mortgagor would suffer harm from fraud); *Dworkin Constr. Corp. v. Shremshock-Yoder Architects*, No. 380352, 1997 WL 397463, at *3 (Conn. Super. Ct. Jul. 1, 1997) (finding that it was foreseeable that inadequate architectural plan developed for zoning approval would be used in bidding process and relied on by bidders); *Cerniglia v. Levasseur*, No. CV 95

4

0548181, 1995 WL 500673, at *3 (Conn. Super. Ct. Aug. 15, 1995).[2]

Further, there is a sufficient connection between the alleged failure to provide verification, and the distress Mr. Packer allegedly suffered to meet the second part of the duty test. Indeed, Mr. Packer alleges that the emotional distress he suffered was a direct consequence of the SN Defendants' inactions. In *Dworkin Construction Corp. v. Shremshock-Yoder Architects*, for example, the plaintiff, Dworkin Construction Company, alleged that the defendant, an architectural firm, knew or should have known that the inadequate architectural plan it submitted to a restaurant would be used as a device by construction companies such as plaintiff's, to calculate bids for a construction project and that the plaintiff would rely on the plan for its bid. The Connecticut Superior Court held that if able to prove that it relied exclusively on the defendant's architectural plan, the plaintiff would have shown the "tighter nexus" necessary to warrant the imposition of a duty. Further, the situation here is not that encountered in *Waters v. Autuori*, in which the Connecticut Supreme Court found insufficient nexus between the standards promulgated by the American Institute of Certified Public Accountants (AICPA) and the disappointed commercial expectations of an investor, who relied to her detriment on financial reports prepared according to

---

[2] The situation here is distinguishable from *Dubinsky v. Citicorp Mortgage, Inc.*, 48 Conn. App. 52, 58-60 (1998), in which the Connecticut Appellate Court held that a potential mortgage lender owed no common law duty to perform an accurate appraisal for the benefit of a loan applicant. The decision in *Dubinsky* was based on the finding that the transmittal letter accompanying the appraisal clearly indicated that the appraisal was conducted solely for use by the defendant in evaluating the collateral for purposes of making a determination whether to enter into the loan and mortgage transaction, and further, the transmittal letter contained a clause disclaiming the defendant's liability for information, estimates and opinions contained in the appraisal. Noting these factors, the court stated that "it was not reasonably foreseeable that the plaintiff, in negotiating the purchase of the property, would rely on the appraisal prepared by the defendant for its own benefit." *Dubinsky*, 48 Conn. App. at 60. *See also IMC Mortgage Co. v. Pettway*, No. CV 980354560, 1999 WL 311167, at *1 (Conn. Super. Ct. May 7, 1999) (noting that *Dubinsky* is inapplicable where purpose of the appraisal was to induce the purchaser to buy).

those standards. *See* 236 Conn. 820, 825 (1996). Unlike Mr. Packer, the plaintiff in *Waters* was a third party who suffered rather indirect harm from the promulgation of AICPA's standards. *See id.* at 831. Nor is this case similar to that encountered in *Owades v. Associates Home Equity Services*, where the sole factor supporting a claim of the existence of a duty was the failure of the mortgagee to record the assignment. *See* 2001 WL 1358769, at *2 (Conn. Super. Ct. Aug. 16, 2001) ("[T]here appears to be no 'duty' arising to the level of a common law, due care obligation owed by an assignee of a mortgage to the mortgagor that the assignee must record the assignment.").

Thus, the Court concludes that Mr. Packer has made the requisite showing of duty for purposes of pursuing his claim of negligent infliction of emotional distress. It is true that Connecticut courts do not appear to have been presented with this precise factual scenario. However, those courts have ruled that a duty is owed in the context of buyers and sellers, real estate agents and third parties, employers and terminated employees as to insurance coverage, and a paramour and spouse. *See, e.g.*, *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 579-80 (1995) (concluding that absence of a special relationship does not preclude imposing duty of care upon defendant newspaper that made casual misstatements to plaintiffs who purchased advertising space from the newspaper); *Miller v. Ryan*, No. CV020821438, 2003 WL 22413548, at *7 (Conn. Super. Ct. Oct. 7, 2003) (concluding that real estate agent owes a duty of care not to misrepresent material facts); *Buckman v. People Express, Inc.*, 205 Conn. 166, 173-74 (1987) (allowing a claim for emotional distress arising from the defendant employer's failure to enable the plaintiff to continue insurance coverage after termination of plaintiff's employment); *Cerniglia v. Levasseur*, No. CV 950548181, 1995 WL 500673, at *4 (Conn. Super. Ct. Aug. 15, 1995) (finding that paramour owed a duty of care to inform plaintiff-wife of her exposure to herpes). Given these

decisions, the Court does not believe that it is a long leap to hold that the SN Defendants had a duty to exercise due care in their relations with Mr. Packer. Of course, whether that duty was breached in this case and whether any distress Mr. Packer claims to have suffered was proximately caused by any such breach are questions for the jury.

Second, the SN Defendants argue that evidence relating to their alleged failures to provide notice and to record should be barred because those events fall outside of the limitations period. Based upon what this Court knows about the case and the governing law in Connecticut, the SN Defendants may well be right, as this Court has previously indicated. Therefore, in their opening statement to the jury, Plaintiffs will want to be particularly circumspect about the descriptions of their negligent infliction of emotional distress claims. For the Court has previously informed all counsel that it will consider whether to strike those particular claims from the case in response to a timely motion for judgment as a matter of law before the case is submitted to the jury.

Finally, asserting that Mr. Packer seeks to do so, the SN Defendants ask this Court to clarify whether Mr. Packer can recover commercial losses such as lost rents or lost profits from his emotional distress claim. It would seem clear that a claim of negligent infliction of emotional distress would allow solely for the recovery of emotional distress and not economic damages. Indeed, the Court has been unable to identify any cases addressing this question. Plaintiffs did not address this question in their Memorandum of Law Regarding Negligent Infliction of Emotional Distress and Punitive Damages [doc. # 274]. Until provided with cases that allow for the claiming of economic damages on an emotional distress claim, the Court concludes that Mr. Packer cannot seek such relief from the jury on his negligent infliction of emotional distress claim. *Cf., e.g.*, *Williams v. Feely*, No. 055000295, 2006 WL 2949079 (Conn. Super. Ct. Oct. 2, 2006) ("Every

Superior Court case that has addressed negligent infliction of emotional distress claims where the only damages was to property has held that Connecticut courts do not recognize a cause of action for negligent infliction of emotional distress based solely on damage to property." (quotation marks and alterations omitted)).

## II.     Plaintiffs' CUTPA Claim

The evidence related to Plaintiffs' CUTPA claim is more limited. Plaintiffs may seek to prove that the SN Defendants violated CUTPA, based only on those claims for which they have been able to show an "ascertainable loss." As provided in the Summary Judgment Ruling and Reconsideration Ruling [doc. # 254], those "ascertainable losses" are limited to: (1) Mr. Packer's lost sale opportunities on the Elm Street property as a result of the SN Defendants' alleged delinquency in providing timely and proper payoff statements; (2) Plaintiffs' payment of approximately $2,200 in interest as to the Elm Street property that was otherwise not due under Connecticut General Statute § 49-10a in light of the SN Defendants' failure to provide the Elm Street payoff letters in a timely manner. This means that Plaintiffs' CUTPA claims are limited to the SN Defendants' failure to provide payoff letters as to the Elm Street property and failure to properly calculate interest under Connecticut General Statute § 49-10a.

Because the SN Defendants appear to question whether Plaintiffs' CUTPA claims can proceed where the Court has found no underlying cause of action under the statutes that Plaintiffs claim the SN Defendants violated, the Court briefly notes, as it did in its Summary Judgment Ruling, that they can. *See* Summary Judgment Ruling at 16. The Connecticut Supreme Court has held that a CUTPA claim can be based on a statute that does not provide a cause of action so long as the claim is "consistent with the regulatory principles established by the underlying statute." *Eder Brothers,*

8

*Inc. v. Wine Merchants of CT*, 275 Conn. 363, 381 (2005) (holding that the Superior Court did not have the "jurisdiction" to decide that the plaintiff did not have standing to bring the CUTPA claim simply because the underlying statute did not provide for a cause of action). To prevail on his CUTPA claim, Mr. Packer must prove that the SN Defendants' actions constituted unfair trade practices, which, Connecticut courts have ruled, is an issue of fact to be decided by the jury. *See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 434 (2004).

### III.    Summary

In sum, outside of background evidence, the proof to be offered for purposes of determining liability or damages for the CUTPA and negligent infliction of emotional distress claims are as follows:

1.    Negligent Infliction of Emotional Distress:

      a.    Subject to whatever the Court may decide in response to a timely filed motion for judgment as a matter of law based upon the statute of limitations, Mr. Packer can seek to prove liability and damages for his negligent infliction of emotional distress claim by putting forward evidence relating to the following alleged wrongdoings by the SN Defendants: 1) failure to timely file a notice of assignment of the mortgages and notes; 2) failure to timely record assignment of the mortgages and notes; 3) improper interest and debt computations; and 4) untimely payoff letters, on the Elm Street property.

      b.    To prove damages relating to this claim, Mr. Packer will only be permitted to introduce evidence relating to his alleged emotional distress, and will not be permitted to point to evidence of commercial losses.

2.      CUTPA: Plaintiffs can seek to prove a CUTPA violation based only on the two alleged wrongdoings for which they can show ascertainable losses: 1) the allegedly erroneous calculations of interest due under § 49-10a; and 2) the documented lost sales opportunities regarding the Elm Street property.  Accordingly, evidence of the SN Defendants' liability under CUTPA will be limited to the SN Defendants' failure to provide payoff letters as to the Elm Street property and failure to properly calculate interest under Connecticut General Statute § 49-10a.

3.      Finally, as noted during the pre-trial conferences, all evidence in this trial will be limited to that relating to the Elm Street property.  The parties will not be permitted to introduce evidence relating to the Blatchley Avenue property.


                                        IT IS SO ORDERED.


                                        /s/ Mark R. Kravitz
                                        Mark R. Kravitz
                                        United States District Judge


**Dated at New Haven, Connecticut: June 11, 2008.**